*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CLARK, Minors.

UNPUBLISHED
January 13, 2026
3:07 PM

Nos. 372778; 373304
Missaukee Circuit Court
Family Division
LC No. 2023-010999-NA

Before: SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

These consolidated appeals[1] arise from child protective proceedings that culminated in the termination of respondent's parental rights to the minor children, CJC and CLC.[2] In Docket No. 372778, respondent appeals by right the trial court's order of adjudication taking jurisdiction over respondent's minor children. In Docket No. 373304, respondent appeals by right the court's order terminating his parental rights to the children under MCL 712A.19b(3)(b)(*i*) (parent's act caused abuse or injury), (j) (reasonable likelihood child will be harmed if returned to parent), (k)(*iii*) (parent battered, tortured, or caused serious physical abuse), and (k)(*iv*) (loss or serious impairment to organ or limb). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner, Department of Health and Human Services (the Department), initiated this case after receiving a complaint related to burns suffered by CJC on November 15, 2023, while he was in respondent's care. According to the petition filed the next day, the Department alleged that CJC received third-degree hot liquid burns on 10% of his body after respondent submerged CJC's legs

---

[1] *In re Clark Minors*, unpublished order of the Court of Appeals, entered April 9, 2025 (Docket Nos. 372778 and 373304).

[2] CJC and CLC were born in 2020 and 2018, respectively.

in hot water. As a result of the burns, CJC was required to be hospitalized for weeks and undergo months of surgeries and therapy.

Respondent claimed that at 2:30 a.m. on November 15, 2023, he woke up to a loud thud and heard CJC crying. Because both CJC and CLC are nonverbal children—CJC was diagnosed with autism—CJC could not explain to respondent what had happened. Respondent stated that he found CJC in the upstairs bathroom, the water faucet on the sink was turned on, and water was overflowing from the sink. Respondent also stated that after he began cleaning the bathroom, he noticed that the water in the sink was very hot and went to check on CJC, whom respondent had placed in his crib. It was at this point that respondent first said he noticed that CJC had burns on his legs. Respondent also noticed a burn on CJC's thumb and buttock. Respondent took CJC and CLC to the hospital, where he met with the children's mother, with whom respondent shared joint custody.

On the basis of the symmetry of the burns and the clear demarcation between the burned and nonburned skin on CJC's legs, medical professionals at the hospital did not believe respondent's version of events and diagnosed the burns as nonaccidental. In addition to the investigation by Children's Protective Services, respondent was charged with second-degree child abuse, MCL 750.136b(3), and later pleaded no contest to third-degree child abuse, MCL 750.136b(5), leading to his incarceration.

After a two-day adjudication trial during which the jury concluded that the court had jurisdiction over the children, and a one-day dispositional hearing, the trial court terminated respondent's parental rights to the children. These appeals followed.

## II. STANDARDS OF REVIEW

"The trial court's decision that a ground for termination of parental rights has been proved by clear and convincing evidence is reviewed for clear error." *In re Pops*, 315 Mich App 590, 593; 890 NW2d 902 (2016). The Court also reviews for clear error the trial court's determination that termination of parental rights is in the best interests of the children, *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), and the trial court's findings regarding reasonable efforts toward reunification. *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

## III. ANALYSIS

Respondent first argues that the trial court clearly erred when it terminated his parental rights because the trial court did not order that the Department offer services toward reunification or make findings of aggravated circumstances such that the services were not required to be offered. We disagree.

Under MCL 712A.19a(2)(a), the petitioner must make reasonable efforts to reunify the child and family in all cases except when, as applicable here, there "is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in . . . MCL 722.638." In relevant part, MCL 722.638 provides:

> (1) The department shall submit a petition for authorization by the court under [MCL 712A.2(b)], if 1 or more of the following apply:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child *or a sibling of the child* and the abuse included 1 or more of the following:

> \* \* \*

> (iii) Battering, torture, or other serious physical harm. [MCL 722.638(1)(a)(*iii*) (emphasis added).]

Thus, MCL 722.638(1)(a) plainly indicates that, if there is a finding relative to one child under the statute, the Department does not need to offer services to a respondent for any other siblings of the child.[3]

In the order of disposition, the trial court found that reasonable efforts toward reunification were not required as a result of respondent's conviction of third-degree child abuse. Respondent does not make reference to this finding by the court in his argument, and there is no suggestion from respondent that he was not convicted of third-degree child abuse[4] as a result of his no-contest plea.

The finding in the court's order of disposition is clearly related to the allegations lodged against respondent that he intentionally submerged CJC's legs in a hot liquid such that CJC received third-degree burns on approximately 10% of his body. The court specifically noted the

---

[3] As this Court has previously stated, in the context of the aggravating circumstances delineated by MCL 722.638(1)(a), "[p]etitioner . . . is not required to provide reunification services when termination of parental rights is the agency's goal." *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009); see also *In re Moss*, 301 Mich App 76, 90-91; 836 NW2d 182 (2013).

[4] Under MCL 750.136b(5):

> A person is guilty of child abuse in the third degree if any of the following apply:

> (a) The person knowingly or intentionally causes physical harm to a child.

> (b) The person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child.

testimony of Dr. Timothy Burton and Dr. Corey Schmidt, offered by the Department, that CJC's burns were immersion burns that would be very difficult to self-inflict given the nature of the burns and the pain that would be involved. The court stated that, according to the doctors' testimony, it also would have been very unlikely that CJC would have even been able to stand after the event, which respondent claimed CJC was doing when respondent found him. In addition, the court did not find respondent's version of events to be credible, stating, "I find it hard to believe that a child would intentionally submerse his legs and sit there while this burn occurred without pulling away[,] causing . . . splash marks." The court continued:

> The only fact scenario that makes sense with these burns is that this child was essentially either dunked or held in boiling water to cause a circumferential burn without a ripple, without any splashes. And so, I think the doctor's testimony is extremely convincing when also coupled with the photographs that I've seen and what the jury has seen as well as the photographs of the residence and the bathroom.

The court also specifically addressed the factors relevant under MCL 722.638, stating that "[t]he battery, the torture, severe physical abuse, and as well—as well as loss and impairment have occurred here." According to the court, "[t]here has then been testimony for the loss of impairment that we had third-degree burns but not only that but the emotional counseling that had to then occur after that due to the fear of water."

Respondent argues that, while the trial court discussed the seriousness of CJC's injuries, and respondent's failure to seek prompt emergency medical care, it never connected those fact to a formal finding of aggravating circumstances. While respondent is correct that, on the record, the trial court did not specifically link its findings that respondent had physically abused the child to its decision to not order reasonable efforts toward reunification, respondent does not offer this Court any authority that such a specific statement on the record is required. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Berger v Berger*, 277 Mich App 700, 715; 747 NW2d 336 (2008). Even if the issue was not abandoned, this Court is not aware of any authority for respondent's proposition. In the order of disposition, the court stated that it was not ordering the Department to offer services toward reunification because of respondent's conviction of third-degree child abuse. The court also plainly made findings that respondent intentionally caused serious harm to CJC and caused the loss or impairment to one or more of his limbs. There also did not appear to be any confusion among trial counsel that the Department was not offering services and that the court made findings relative to the injuries suffered by the children. Thus, in this case, where the trial court made a determination that respondent had subjected the child abuse consistent with MCL 722.638(1)(a)(iii) (battering, torture, or other serious physical harm), the trial court did not clearly err when it found that reasonable efforts toward reunification were not required.

Next, respondent argues that the trial court clearly erred because there was not clear and convincing evidence that one or more statutory grounds for termination was established. We disagree.

" 'If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be

made.'" *In re VanDalen*, 293 Mich App at 139, quoting MCL 712A.19b(5). The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (j), (k)(*iii*), and (k)(*iv*). Those provisions state:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.
>
> (k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:
>
> * * *
>
> (*iii*) Battering, torture, or other severe physical abuse.
>
> (*iv*) Loss or serious impairment of an organ or limb.

Respondent accurately notes that the trial court relied on the testimony of Drs. Burton and Schmidt when concluding that CJC's burns were nonaccidental. According to respondent, however, the testimony from the doctors was inconclusive as to the source of the burns and, therefore, in light of his testimony that CJC's burns were caused by accident, petitioner did not present clear and convincing evidence that a statutory ground for termination had been met.

Contrary to respondent's suggestion in his brief on appeal, neither Dr. Burton nor Dr. Schmidt equivocated that the large burns on CJC's legs were the result of an immersion injury that was indicative of a "controlled event." Dr. Burton testified that it was his opinion that CJC's "feet and legs were submerged in a hot liquid." When asked whether the injury could be self-inflicted, Dr. Burton responded that, "given the patient's age and severity of the burns, I find it difficult to imagine that this was self-inflicted." Dr. Burton did admit however that he did not know "exactly

what happened at the injury because I was not present."[5]  Dr. Burton also testified that he was unsure how the burns to CJC's thumb and buttock occurred, but "if I were to guess, based on the injury pattern, I would consider those two injuries splash injuries."  Dr. Burton stated that there was "a lot of variability in splash patterns" and could only "tell grossly that that's likely a splash injury."

Dr. Schmidt similarly testified that it was his opinion that the injuries to CJC were the result of a "controlled event."  Dr. Schmidt explained:

> I would expect at his age if he were to have his leg in water or a fluid hot enough to cause those burns, it would be kind of an erratic event in which he would feel pain, the leg would move around quite a bit and not—not really produce that clear of a line across.

Dr. Schmidt also found it very unlikely that CJC would have been able to stand on his feet after receiving the burns.  Concerning the other burns on CJC's body, Dr. Schmidt found it "a lot more difficult to know a lot about what happened with those."  Dr. Schmidt diagnosed CJC's injuries as "pediatric physical abuse."

Dr. Schmidt was not able to confidently diagnose the source of the burns on the thumb and buttock, stating, "I cannot determine if those were inflicted or accidental."  He did opine, however, that he would not expect to see injuries on the thumb and buttock from touching water that was already on the floor:

> So in general, if you fall onto the ground, you typically are going to use your hands to help yourself get up.  So, I would expect if there was hot water on a carpet and you use your hands to either brace yourself when you fall or to use it to then get back up, I would expect a lot more of a hand to be burned rather than just the tip of one thumb.  And then similarly, if you fell onto your backside, to sustain just a pretty small burn on this one part of your upper buttock would be a little odd to me.

For its part, the trial court disagreed with respondent's argument that the medical doctors were conflicted in their diagnosis of the source of CJC's burns.  The court noted Dr. Burton's testimony that "this is an immersion burn, that it was caused by a hot liquid, that in his professional opinion that given the age of the child, the severity of these burns, it would be extremely difficult . . . for him to imagine that this could have been self-inflicted."  Similarly, referencing Dr. Schmidt's testimony, the court noted "his concern here and his conclusion also is non-accidental and intentional burning and his following [sic] was because of the concern of the uniformity of the burn, the degree of the burn, here being a third degree burn."  In contrast, the court stated that if found respondent's version of events "hard to believe."  The court explained:

---

[5] Dr. Burton also testified that, of the more than 500 people he treated for burn injuries, he was not present when any of their injuries occurred, yet he was able to diagnose and treat those injuries.

So, if we believe the father's version this child would have been splashing around in the sink it would have burned himself potentially that way. Would have burned himself by maybe placing his feet into the sink and or splashing around on the water that's all over the floor. The splashing around in the water all over the floor is completely not even plausible at all with what the doctors testify could have occurred here.

Thus, contrary to respondent's argument on appeal, neither Dr. Burton nor Dr. Schmidt equivocated as to the source of the third-degree burns on CJC. Both opined that it would have been very unlikely for CJC to have inflicted such a serious wound on himself given the time it would have taken to reach a third-degree burn. While neither doctor could precisely diagnose the burns on the other parts of CJC's body, neither doctor believed those injuries were inconsistent with respondent intentionally causing the burns. Moreover, the trial court was entitled to judge the credibility of the various witnesses and to conclude that it did not believe respondent's version of events. *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (stating that the Court "must defer to the special ability of the trial court to judge the credibility of witnesses") (quotation marks and citation omitted).

In his statement of the issues presented, respondent also argues that the trial court clearly erred because there was not sufficient evidence that respondent was the perpetrator of the injuries. Respondent does not develop this argument in his brief on appeal and has, therefore, abandoned the argument. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). But even if not abandoned, the argument lacks merit. Respondent was the only adult at home with the children on the night of November 15, 2023. Taking as true the assertion that CJC's injuries were nonaccidental, the only adult that could have inflicted the injuries was respondent. See *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011) (holding that "termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries.").

Lastly, respondent contends that the trial court clearly erred when it found that termination was in the children's best interests because the court did not conduct a bonding assessment with the children and overly relied on the fact of respondent's incarceration as a justification for termination. We disagree.

To terminate parental rights, the trial court must "find[] by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). All available evidence should be weighed by the trial court, which should consider factors such as " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *In re White*, 303 Mich App at 713, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). In addition, "[t]he trial court may also consider a parent's history of domestic violence . . . ." *In re White*, 303 Mich App at 714.

As an initial matter, respondent does not cite any authority for the proposition that a bonding assessment is necessary in any circumstance. Indeed, we are unaware of any published

case or statute in which the issue of bonding assessments is addressed. Thus, the issue has been abandoned. See *Berger*, 277 Mich App at 715.

Even if not abandoned, however, the trial court did not clearly err when it denied respondent's motion for a bonding assessment and found that the children's best interests were served through termination in the absence of such an assessment. For purposes of its best-interest analysis, the court *presumed* that respondent and his children shared a bond. Even in light of the bond between respondent and his children, the trial court determined that termination was in their best interests.[6]

Concerning the issue of incarceration, we find respondent's reliance upon *In re Mason*, 486 Mich 142, 146; 782 NW2d 747 (2010), to be distinguished. In that case, the Michigan Supreme Court reversed the judgment of this Court affirming the trial court's decision to terminate the respondent's parental rights based upon his incarceration. While the respondent was incarcerated for drunk driving, the Department began termination proceedings with respect to the mother after the children were found "wandering" unsupervised. *Id*. at 147. "The removal petition filed by the [Department] also accused respondent of neglect, citing his criminal history and alleging that he has failed to provide for the children physically, emotionally and financially." *Id*. (quotation marks omitted).

As a result of his incarceration, the respondent was not included in various hearings and was not informed of his right to participate by telephone. *Id*. at 148. During the termination hearing, the respondent was faulted "because he had not personally cared for the children for at least the past two years" and because "his incarceration precluded him from taking advantage of services offered by the [Department]." *Id*. at 151.

Reversing the decision of the trial court to terminate the respondent's parental rights, the Supreme Court stated:

> [T]he state's failures in this case (which are all too common in this type of case) appear to stem primarily from the fact of respondent's incarceration. Not only did the state fail to properly include him in the proceedings, but the circuit court's ultimate decision in the case was replete with clear factual errors and errors of law that essentially resulted in the termination of respondent's parental rights solely because of his incarceration. The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination. [*Id*. at 160.]

In this case, on appeal, respondent contends that the trial court violated the spirit of *In re Mason* when it remarked that the children had not seen their father in over a year as a result of his

---

[6] We also note that, in order to conduct a bonding assessment, the children would have had to go to respondent's place of incarceration and that the court did not want to subject the children to such a traumatic event. But, as noted above, the court ultimately presumed that the children and respondent shared a bond. As a result, we cannot find that the court erred by not nonetheless ordering a bonding assessment to take place at respondent's place of incarceration.

incarceration. This argument, however, grossly oversimplifies the trial court's ruling, which spans almost 16 pages of the transcript. The court spent considerable time discussing the children's need for permanence and stability and only briefly discussed the fact of respondent's incarceration, stating:

> I think it's time that we make it free and clear that the father could [sic: cannot] come back into their lives. They could be yanked out from their current stable environment which appears and seems to be going extremely well. And that is what they've known for the past year in their very young life. And as [the guardian ad litem] pointed out that is what they are going to know for their next two years of their life before dad is even able to have contact per his probation order.

Thus, it is clear that the court did not base its decision that the children's best interests were served by termination on the fact that respondent was incarcerated, but rather on the fact that the children would spend at least three years without contact with their father as result of his no-contest plea for child abuse. In the court's view, the children's need for permanence and finality dictated that three years was too long of a period of time to have uncertainty in their future.

Moreover, unlike in *Mason*, where the Department did not present any evidence that the respondent harmed his children, the court in this case was permitted—to the extent it did—to consider respondent's criminal conviction as a basis for termination. As the Court noted in *Mason*,

> termination solely because of a parent's past violence or crime is justified only under certain enumerated circumstances, including when the parent created an unreasonable risk of serious abuse or death of a child, if the parent was convicted of felony assault resulting in the injury of one of his own children, or if the parent committed murder, attempted murder, or voluntary manslaughter of one of his own children. [*Id*. at 165.]

Accordingly, the trial court did not clearly err when it considered the fact of respondent's incarceration when determining whether it was in the children's best interests to terminate respondent's parental rights.

Affirmed.


/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

-9-